Marc S. Dreier (MD 9713)
Ira S. Sacks (IS 2861)
Mark S. Lafayette (ML 4256)
Safia A. Anand (SA 2386)
DREIER LLP
499 Park Avenue
New York, NY 10022
(212) 328-6100
Attorneys for Plaintiff



UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------x

ANYWHERECD, LLC,

                      Plaintiff,

        -against-

WARNER MUSIC INC. and WARNER MUSIC
GROUP CORP.,

                      Defendants.
----------------------------------------------------------------x

07 CV 3167

Civil Action No.

**COMPLAINT**

**PLAINTIFF REQUESTS
TRIAL BY JURY**

Plaintiff AnywhereCD, LLC ("AnywhereCD" or "Plaintiff"), by its attorneys Dreier

LLP, alleges on knowledge as to its own acts and otherwise on information and belief as

follows:

## NATURE OF THE ACTION

    1.    Plaintiff spent over one million dollars to develop, promote and premiere one

of the most consumer-friendly music websites available.  The purpose of the website was to

permit consumers to purchase full album compact discs ("CDs") and open MP3 format files

of the CDs to be used in any lawful manner by the consumer, including by downloading the

MP3 files to their portable music devices, such as iPODs, or to their secure internet lockers. After securing the agreement of Warner Music, Inc. ("Warner Music") to provide content for the AnywhereCD website, Warner Music and its affiliate Warner Music Group Corp. ("WMG") maliciously and in bad faith asserted that AnywhereCD breached that agreement and made false and damaging statements to the press, which were intended to injure and destroy AnywhereCD's business.

2.      Accordingly, through this action AnywhereCD seeks (a) a declaratory judgment that (i) AnywhereCD is not violating Defendants' copyrights by offering for sale and selling music in MP3 format; and (ii) the Digital Music Download Agreement, dated February 26, 2007, between Plaintiff and Warner Music is still in full force and effect, and (b) damages arising out of Defendants' malicious and bad faith tortious interference with AnywhereCD's business and prospective business relations, defamation of AnywhereCD's business, trade libel and breach of contract.

## JURISDICTION AND VENUE

3.      This is an action for declaratory judgment pursuant to 28 U.S.C. § 2201 and Rule 57 of the Federal Rules of Civil Procedure seeking a declaration of rights and/or other legal relations of the parties to this litigation with respect to an actual controversy arising under the copyright laws of the United States, 17 U.S.C. § 101 *et seq.*

4.      This Court has jurisdiction over this matter pursuant to the Copyright Act (17 U.S.C. § 101 *et seq.*); 28 U.S.C. §§ 1331, 1338 and 1367; and the Declaratory Judgment Act (28 U.S.C. § 2201), and related claims under the common law of the State of New York and other states.  Venue is proper in this district pursuant to 28 U.S.C. §§ 1391 and 1400(a) because Defendants transact business in this district.

## THE PARTIES

5.      Plaintiff AnywhereCD is a Delaware limited liability corporation with its principal place of business at 5960 Cornerstone Court, Suite 150, San Diego, California 92121.

6.      Defendant Warner Music is a Delaware corporation with its corporate headquarters located at 75 Rockefeller Plaza, New York, New York 10019.

7.      Defendant WMG is a Delaware corporation with its corporate headquarters located at 75 Rockefeller Plaza, New York, New York 10019.

8.      Warner Music and WMG are collectively referred to herein as "Warner."

## FACTS

9.      In or about late October 2006, AnywhereCD and Warner entered into negotiations with respect to an agreement which would permit AnywhereCD to sell CD's containing Warner owned music ("Warner Content") bundled with high quality MP3 files of those purchased CD's to consumers through a website.  During the negotiation process, the AnywhereCD proposal (as embodied in the Agreement (as defined below)) went before the full WMG executive committee and was approved.

10.      Thereafter, AnywhereCD and Warner Music entered into a Digital Music Download Agreement, dated February 26, 2007, (the "Agreement").  The planned launch date for the website was April 11, 2007.

11.      In connection with the Agreement and otherwise, AnywhereCD invested more than $1 million in engineering, servers, data center, marketing, public relations, quality assurance, customer support, royalties and other fees to make AnywhereCD a reality.  Warner

was aware of that investment, the plans for the AnywhereCD website, and the potential expansion of the AnywhereCD business.

12.    The AnywhereCD website was launched on the morning of April 12, 2007.

13.    The AnywhereCD website permitted consumers the option of selecting an "MP3 Album" or an "MP3 Album + CD." For both options, the consumer was buying a CD. For the "MP3 Album" option, the physical CD, although purchased by the consumer, would not be delivered to the consumer (and would have to be picked up by the consumer, if desired). That saved the consumer approximately $3. For the "MP3 Album + CD" option, the physical CD would be shipped as directed by the consumer by AnywhereCD. For both options, AnywhereCD electronically sent an MP3 format file with the music from the CD to the consumer.

14.    The Terms of Sale on the AnywhereCD website clearly state that a consumer's MP3 Album purchase is an effective compact disc purchase. Moreover, Warner was specifically made aware of the difference between the two options described above at or prior to launch.

15.    As Warner knew well in advance from the Agreement, the AnywhereCD website sold CDs bundled with MP3 files that were not protected by digital rights management ("DRM").

16.    For every CD and MP3 file that was sold, AnywhereCD paid Warner the same royalties (irrespective of the option chosen by the consumer) and either delivered the physical CD to the consumer or held the physical CD for the consumer.

17.    The operation of the AnywhereCD website as described above was fully licensed by Warner and fully complied with the Agreement.

18.     Notwithstanding such compliance, at 4:25 pm EDT on April 12, 2007, Warner faxed AnywhereCD a malicious and bad faith termination letter (the "April 12 Letter") stating, among other things, that AnywhereCD was in breach of the Agreement because it was offering for sale and selling digital copies of Warner Content in MP3 format separate from the sale of a physical CD. The April 12 Letter also stated, among other things, that the Agreement was terminated, effective immediately, and that if AnywhereCD did not immediately cease and desist from the offer of sale and sale of Warner content, Warner would bring an action for willful copyright infringement and seek a temporary restraining order. The April 12 Letter provided AnywhereCD with no notice that it had a certain period of time to cure the default alleged by Warner prior to any purported termination.

19.     The April 12 Letter was sent in bad faith and to maliciously injure AnywhereCD for Warner's own improper purposes. Warner was fully aware that under both options on the AnywhereCD website, AnywhereCD was selling physical CDs along with MP3 files in a bundle. Warner also knew that the MP3 files were not DRM protected. Warner was fully aware that AnywhereCD was in full compliance with the Agreement and attempted to wrongfully terminate the Agreement for reasons unrelated to the AnywhereCD website.

20.     Despite the fact that AnywhereCD was in full compliance with the Agreement, in order to attempt to resolve the issue consensually, at 10:30 pm EDT AnywhereCD removed the "MP3 Album Option" from the AnywhereCD website. Thus, the alleged breaching content was only on the website for a total of six hours, any such breach was *de minimis* and was immediately cured within hours of Warner's improper notice.

21.    On April 13, 2007, AnywhereCD's counsel responded to Warner's April 12 Letter (the "April 13 Letter") informing Warner that the "MP3 Album Option" had been removed from AnywhereCD's website, without prejudice to its rights and remedies, and explaining in lengthy detail that AnywhereCD was not in breach of the Agreement.

22.    In response, Warner's outside counsel sent a letter on April 16, 2007 (the "April 16 Letter"), stating that Warner rejected the arguments asserted by AnywhereCD in the April 13 Letter, reiterating that the Agreement was terminated and demanding that AnywhereCD immediately cease and desist from selling or offering for sale Warner content. The letter threatened that if AnywhereCD persisted in its refusal to cease and desist from such sales activity, Warner would avail itself of its legal remedies.

23.    Additionally, on April 12, 2007 and thereafter, Warner knowingly and maliciously made false public statements to Reuters that AnywhereCD had violated their agreement by selling Warner's music without DRM protection and selling such unprotected albums directly without a license.  *See* Exhibit A attached hereto.  Warner knew those statements were false when made.

24.    Moreover, on April 12, 2007, Warner knowingly and maliciously made false public statements to Billboard that "AnywhereCD is selling Warner Music Group content in a manner that flagrantly violates the terms of our agreement … Accordingly we have sent them a notice of termination and they are required to immediately remove all of our content from their site."  *See* Exhibit B attached hereto.

25.    These statements by Warner are false, defame AnywhereCD's business and have significantly interfered with AnywhereCD's prospective business relations.  Warner

knew the statements were false when made, had no legitimate purpose in making the statements, and did so with the intent to injure AnywhereCD.

26.    Warner made the foregoing false statements knowing that the statements would injure AnywhereCD and interfere with its future business prospects. As a result of Warner's malicious actions, AnywhereCD's business has been substantially injured.

27.    AnywhereCD spent more than $1 million in the development and launch of its website and the technology associated therewith, and Warner's actions have greatly harmed AnywhereCD's business prospects by wrongfully terminating the contract and making false statements in the press.

28.    Warner's motives in making the malicious false statements were to appear to the public that it fully supported DRM, when in fact it does not. Edgar Bronfman, the Chairman of the Board and CEO of WMG, stated in an earnings conference call on February 8, 2007 that

> Let me be clear: we advocate the continued use of DRM in the protection of our and of our artists' intellectual property. The notion that music does not deserve the same protections as software, television, film, video games or other intellectual property simply because there is an unprotected legacy product available in the physical world is completely without logic or merit.
>
> But let's not lose sight of the core issue. By far the larger issue for consumers in the music industry is interoperability. As a content company, we of course want consumers to seamlessly access our music and to use the music they have purchased on any platform and with any service, physical or digital.
>
> The issue is obscured by asserting that DRM and interoperability is the same thing. They are not. To suggest that they cannot co-exist is simply incorrect. At Warner Music, we continue to seek a balance between appropriate protections for our intellectual property and a robust and satisfying music experience for consumers. Interoperability sure would enhance that balance, while eliminating DRM would do just the opposite.
>
> We will not abandon DRM, nor will we disadvantage services that are successfully implementing DRM for both content and consumers.

29.    That statement was false and totally inconsistent with the Agreement between Warner and AnywhereCD, and Mr. Bronfman knew it when he said it.

30.    Warner told Reuters on or about April 12, 2007 that "[w]hat Warner takes issue with is AnywhereCD selling unprotected albums directly to buyers without a license." Warner told Reuters that AnywhereCD is selling its music in a manner that "flagrantly violates" their agreement, and accordingly, have sent them a notice of termination and they are required to immediately remove all of our content from their site." The Reuters release repeated what Mr. Bronfman told investors in February – that selling digital music without protection was not logical. Again, according to Mr. Bronfman, "[t]here is no reason to conclude that music is the one content category that should not or cannot be protected, simply because there is an unprotected legacy product available in the physical world." Those statements by Warner and Mr. Bronfman were false and totally inconsistent with the Agreement being negotiated with and reached between AnywhereCD and Warner.

31.    Warner knew that its malicious conduct set forth above would interfere with AnywhereCD's existing and prospective business. Warner knew that AnywhereCD intended to conclude similar arrangements with other major (and independent) music labels. Warner knew that AnywhereCD intended to conclude arrangements with major retailers. Warner acted with the sole purpose of harming AnywhereCD and/or used dishonest, unfair, or improper means to do so. In so doing, AnywhereCD's ability to conclude similar arrangements with other major (and independent) music labels and retailers has been injured.

.

## FIRST CLAIM FOR RELIEF AGAINST ALL DEFENDANTS
### (DECLARATORY JUDGMENT)

32.     Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 31 above as if fully set forth herein.

33.     Plaintiff has received two letters from Defendants and/or its litigation counsel threatening to bring suit against Plaintiff for copyright infringement.  As a result of the foregoing, Plaintiff has a reasonable apprehension of being sued by Defendants for copyright infringement and a justiciable controversy exists.

34.     Accordingly, AnywhereCD seek a declaratory judgment pursuant to 28 U.S.C. § 2201 and Rule 57 of the Federal Rules of Civil Procedure that it is not violating Warner's copyrights.

## SECOND CLAIM FOR RELIEF AGAINST ALL DEFENDANTS
### (DECLARATORY JUDGMENT)

35.     Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 34 above as if fully set forth herein.

36.     Plaintiff believes that the Agreement is still in full force and effect and that Defendants wrongfully attempted to terminate the Agreement.  Defendants assert that the Agreement has been terminated.  As a result of the foregoing, a justiciable controversy exists.

37.     Accordingly, AnywhereCD seek a declaratory judgment pursuant to 28 U.S.C. § 2201 and Rule 57 that the Agreement is still in full force and effect.

## THIRD CLAIM FOR RELIEF AGAINST ALL DEFENDANTS
## (TORTIOUS INTERFERENCE WITH PROSPECTIVE BUSINESS RELATIONS)

38.    Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 37 above as if fully set forth herein.

39.    As Warner knew, AnywhereCD was in negotiations with other music labels and stores at the time it launched on April 12, 2007.

40.    As set forth above, by publicly making false statements, Warner willfully interfered with those prospective business relations.

41.    Warner has used dishonest, unfair and improper means to interfere with AnywhereCD's prospective business relationships.

42.    The false statements were directed, in part, at the other music labels and stores, to interfere with AnywhereCD's negotiations with them.

43.    But for Warner's wrongful conduct, AnywhereCD would have entered into business relationships with certain parties.

44.    By reason of the foregoing, AnywhereCD has been damaged in an amount to be determined at trial, together with punitive damages.

## FOURTH CLAIM FOR RELIEF AGAINST ALL DEFENDANTS
## (DEFAMATION AND TRADE LIBEL)

45.    Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 44 above as if fully set forth herein.

46.    As set forth above, Warner made false, defamatory statements to third parties with malice, and AnywhereCD suffered special damages as a result. The false, defamatory statements by Warner caused substantial harm to AnywhereCD's business reputation and its

business. Thus, AnywhereCD has suffered harm of a pecuniary or economic kind, and not mere reputational harm.

47.    Warner's false statements about AnywhereCD were likely to be understood as defamatory by the ordinary person, and were published by Warner with actual malice, that is, either with knowledge of falsity or reckless disregard of the truth.

48.    As a direct result of the foregoing, AnywhereCD has suffered damages in an amount to be determined at trial.

### FIFTH CLAIM FOR RELIEF AGAINST WARNER MUSIC (BREACH OF CONTRACT)

49.    Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 48 above as if fully set forth herein.

50.    Warner Music has breached the Agreement because it attempted to wrongfully terminate it, despite the fact that Warner Music was aware that AnywhereCD was in full compliance.

51.    AnywhereCD has fully performed its obligations under the Agreement. Moreover, if any breach by AnywhereCD occurred – which it did not – that breach was *de minimis* and/or cured, and Warner Music's notice of the breach was improper.

52.    Warner Music's attempt to wrongfully terminate the Agreement was willful and malicious.

53.    AnywhereCD has suffered damages as a result of Warner Music's breach.

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in its favor and against Defendants, as follows:

     A.    On the First Cause of Action, a declaratory judgment that AnywhereCD is not infringing Warner's copyrights;

     B.    On the Second Cause of Action, a declaratory judgment declaring that the Agreement is still in full force and effect;

     C.    On the Third Cause of Action for tortious interference with prospective business relations, judgment against Warner for damages in an amount to be determined at trial, together with punitive damages;

     D.    On the Fourth Cause of Action for defamation and business libel, judgment against Warner for damages in an amount to be determined at trial, together with punitive damages;

     E.    On the Fifth Cause of Action for breach of contract, directing Warner Music to comply with the Agreement and direct Warner Music to pay AnywhereCD compensatory damages for the foregoing breach; and

     F.    Granting Plaintiff such other, further and different relief as the nature of the case may require or as may be determined to be just, equitable, and proper by this Court.

Dated: New York, New York
       April 20, 2007

                             Respectfully submitted,

                             Ira S. Sacks (IS 2861)
                             Marc S. Dreier (MD 9713)
                             Mark S. Lafayette (ML 4256)
                             Safia A. Anand (SA 2386)
                             Dreier LLP
                             499 Park Avenue
                             New York, NY 10022
                             (212) 328-6100

                             *Attorneys for Plaintiff*